## Mitchell v. Jeff Davis Motor Company et al.

(Decided November 28, 1930.)

MILLARD D. GRUBBS for appellant.

JOHN T. KING for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Caludis O. Mitchell sued Elmo Lacy and the Jeff Davis Motor Company for possession of one Chevrolet truck and for $1,500 damages for the detention thereof. He was unsuccessful, and he appeals.

This was a one-ton Chevrolet truck which had been sold to Mitchell, new, on July 5, 1928, by the Jeff Davis Motor Company. Mitchell paid $238, and executed a conditional sale contract by which he promised to pay $42 per month for 12 months, with provision for acceleration of maturity of all payments, at option of seller, upon default of payment of any one when due, the title to remain in the seller until all payments had been made.

It appears Mitchell had trouble meeting these payments. On April 5, 1929, there was a balance of $210 due on the truck, of which he had allowed two payments, or $84 to get in arrears. Garland Cunningham, of the Jeff Davis Motor Company, called on Mitchell for payment. Mitchell was unable to pay, and left the truck with a Mr. Lacy upon the following agreement:

"I, C. O. Mitchell, hereby authorize L. E. Lacy to hold my Chevrolet truck until April 9th, for the Jeff Davis Motor Co. At which time I will have the privilege of redeeming same provided I pay the two delinquent payments in the amount of $42.00 each, which will bring the payments up to date. In case I fail to make said payments at the above stated time I agree to transfer the bill of sale on the truck over to the Jeff Davis Motor Co., for balance due on the truck.

"(Signed)   C. O. Mitchell."

Mitchell did not meet his payments on the 9th, and on April 15th he sued as stated in the caption. The motor company answer in two paragraphs; in the first they set up the agreement of April 5th and in the second they asserted a lien on the truck for the $210 balance which Mitchell owed upon it. Mitchell filed a demurrer to the second paragraph, which was sustained, and a reply to the first paragraph, in which, he pleaded the above agreement had been obtained by fraud, duress, etc. Upon that issue they went to trial. The court instructed the jury to find for the defendants, unless they believed from the evidence the agreement was obtained by fraud, duress, or misrepresentation, in which event they would find for plaintiff and award him such damages as would reasonably compensate him for the use of the truck during the time he was wrongfully deprived of its use, if he was, not to exceed $1,500. The court told the jury that to constitute fraud or duress there must be something more than a mere statement they would send the sheriff after the truck, as, under the contract, they had a right to attach the truck.

The jury found for the defendants, Mitchell sought a new trial below, and seeks a reversal here for the following reasons:

He says the court erroneously overruled his motion for a continuance, but we are unable to find such a motion

in the record. He complained of the instructions given by the court, but we find no fault in them. He says the instructions A, B, C, and D offered by him should have been given, but no such instructions are in the record. He should have brought them here. He complains of the court's rulings on the evidence. We shall group that and discuss it briefly.

When the defendants were on the stand, counsel for Mitchell interrogated them about certain letters and receipts sent them by "The Company," and asked them if they had them with them; they said "No." Then he asked them rather sharply why they had not brought them. The trial lasted two days, and on the second day the defendants had their letters, receipts, etc., and the court allowed them to read pretty much everything they offered to read. Of course, in a contest between Mitchell and the Jeff Davis Motor Company, letters, receipts, etc., sent the Jeff Davis Company by the General Motors Corporation or the Acceptance Corporation would not be admissible, if Mitchell had not asked for them, but, when he does ask for them, he cannot complain when he gets them.

Mitchell's case is rested on the claim that the agreement by which he left this truck with Lacy was obtained by fraud, duress, etc. The evidence shows they did refuse to take his checks and talked quite forcibly to him. As a part of their justification for talking to him so positively, they stated nearly every check they received from him was cold, and, when he was being cross-examined, they forced him to admit he had given them cold checks. This evidence was properly admitted on the question of duress. It enabled the jury to know Mitchell and his business methods. It threw light on whether or not Mitchell was so frightened when they told him they were going to get a warrant of delivery for the truck that he signed this agreement under duress. A man continually flirting with the sheriff by giving cold checks is not usually much disturbed when an order of delivery is threatened.

He alleges the court erred in not compelling the Jeff Davis Motor Company to file the contract to pay $504 in twelve payments which he had executed. This suit was not bottomed on that contract. This suit rested on alleged fraud in obtaining possession of this truck. The

contract for the purchase of the truck had no place in the case, nor did the General Motors or the Acceptance Corporation. The defendant made a mistake when he demurred out of court the second paragraph of the answer of the defendants. Mitchell probably concluded he had rather take his chances on getting $1,500 damages than to take a secondhand truck with a $210 lien upon it.

His case was fairly tried, he was trying to get out of a contract he had freely made by a claim it was obtained by fraud and threats; he was allowed to testify quite freely; and he does not say he was frightened or testify to any fraud or anything calculated to frighten him.

The judgment is affirmed.